Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4865 | **DATE** | 7/18/2001 |
| **CASE TITLE** | Trucook, L.L.C. vs. Bond/Helman, Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 18 Sept. 01 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: U.S. Design Patent No. 405,705 is construed as set forth in the attached memorandum opinion and order.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 19 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 21 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | | |
| WAP | courtroom deputy's initials | 01 JUL 18 PM 4: 20 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
JUL 18 2001
Judge Harry D. Leinenweber
U.S. District Court

TRUCOOK, L.L.C.,

    Plaintiff,

v.

BOND/HELMAN, INC.; THE HELMAN GROUP, LTD.; HERSH/HELMAN, INC.; LINENS N' THINGS, INC.; KMART CORPORATION; WAL-MART STORES, INC.; BED, BATH & BEYOND INC.; CVS CORPORATION; and HOMEPLACE OF AMERICA, INC.,

    Defendants.

Case No. 00 CV 4865

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

TruCook accuses defendant Bond/Helman ("Helman") of infringing its U.S. Design Patent No. 405,705 ("the '705 patent"). Before the Court are the parties' submissions pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996), setting forth their contentions regarding the proper construction of the '705 patent.

### BACKGROUND

Inventor Charles Norcross applied for a utility patent for his invention, a meat thermometer in the shape of a large two-prong meat fork. The fork-thermometer has a long rectangular handle with an end-cap and a protective flange on opposite ends. Extending from the handle is the fork neck and the two-tined fork head. An examiner rejected his application as unpatentable in light of the prior art, but Norcross filed a continuing application for the

design patent now owned by TruCook. The '705 patent was issued on February 16, 1999, for the invention entitled, "Indicator Device and Utensil for Cooking Meat."

The patent text reads, "The ornamental design for an indicator device and utensil for cooking meat, as shown and described." The claim also includes fourteen Figures (the "Figs.") showing different views and embodiments of the claimed design. Figs. 1-6 show the fork-thermometer from various angles, including a view of the top of the utensil in Fig. 2 and a view from the side in Fig. 3. Figs. 7-10 show the handle and end-cap with four different temperature gauges; and Figs. 11-14 are identical to Figs. 7-10 respectively, except that the handle and end-cap are drawn with dotted lines. The patent states that the "dotted lines indicate components for illustrative purposes only and form no part of the subject design."

## DISCUSSION

To determine whether a design patent has been infringed, first the claim must be construed and then the design must be compared to the accused device. *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995). The fact-finder must decide whether an ordinary purchaser would view the patented design as a whole as substantially similar in appearance to the accused design. *OddzOn Prods, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405, 43 USPQ2d 1641, 1647 (Fed. Cir. 1997). "In determining this overall

similarity of design, the ordinary observer must be deceived by the features common to the claimed and accused designs that are ornamental, not functional." *Unidynamics Corp. v. Automatic Prods. Int'l, Ltd.*, 157 F.3d 1311, 1323 (Fed. Cir. 1998). If the accused device is not substantially similar, the inquiry ends at the ordinary observer test, and the accused device does not infringe. If the accused design is visually similar to the patented design overall, the fact-finder then must conclude that the similarity is based on the patented device's ornamental features and points of novelty that distinguish it from the prior art. *Unidynamics*, 157 F.3d at 1323-24.

The question of patent infringement is one of fact, *Precor, Inc. v. Life Fitness*, Nos. 00-1201, 00-1328, 2001 WL 727011, at *4 (Fed. Cir. June 27, 2001), but claim construction is a question of law. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998). Design patents are narrow in scope, limited to what is shown in the application drawings. *Elmer*, 67 F.3d at 1577. A design patent protects the novel, ornamental features of the patented design but not the functional elements. *Unidynamics*, 157 F.3d at 1323. A court's claim construction therefore properly limits the scope of the patent to its overall ornamental visual impression, rather than to the broader general design concept. *See Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 104 (Fed. Cir. 1996).

When construing a claim, a court must look first to the intrinsic evidence, which consists of only the patent, the specification, the prosecution history, and the cited references. *Vitronics Corp. v. Conceptronics, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). When the intrinsic evidence is clear, claim construction cannot be based on contrary extrinsic evidence. *Id.* at 1583. When a claim is susceptible to more than one construction, it should be construed to preserve its validity when reasonably possible. *Karsten Mfg. Corp. v. Cleveland Golf Co.*, 242 F.3d 1376, 1384 (Fed. Cir. 2001). The parties propose competing claims. Helman's claim construction is quite specific and detailed, while TruCook's construction is quite general and mainly refers to the patent drawings. The parties vigorously dispute whether the flange is functional, the meaning to be attributed to the dotted lines in Figs. 11-14, and whether the shape of the temperature gauge has been disclaimed.

First, the parties dispute whether the flange must be included in the claim construction, with Helman asserting that the flange is primarily ornamental and TruCook arguing that it is only functional. The question of whether a patented design is functional or ornamental is a question of fact. *See Hupp v. Siroflex of America, Inc.*, 122 F.3d 1456, 1460 (Fed. Cir. 1997). However, where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to

- 4 -

identify the non-functional aspects of the design as shown in the patent. *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988). Accordingly, if the flange is primarily functional, a court would not consider it when formulating the claim construction.

The Federal Circuit normally considers functionality versus ornamentality when confronting the issue of design patent validity. Nevertheless, the principles enunciated in those cases are instructive when deciding whether a particular feature is primarily functional or primarily ornamental for purposes of claim construction. All manufactured items serve a utilitarian purpose, but the design of a patented device is deemed to be functional when the appearance of the claimed design is dictated by the use or purpose of the article. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993). If a particular design is essential to the use of the article, then it is primarily functional and cannot be the subject of a design patent. *Id.* When there are several ways to achieve the function of an item, the design of the article is more likely to serve a primarily ornamental purpose. *Id; see also Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1455-56 (Fed. Cir. 1997).

TruCook asserts that the rectangular flange is primarily functional because it only serves to protect a user's thumb and hand from sliding down the handle toward an open flame. Nevertheless, cooking utensils regularly lack any type of

protective flange, and the utility of this device would not be substantially impaired without the flange. Therefore, the flange cannot be described as essential to TruCook's device. When a cooking utensil does incorporate a protective flange, the flange may appear in a myriad of styles ranging from simple to ornate. This particular flange may be quite simple, but it could have been designed in a multitude of ways. Its size and shape certainly are not dictated by its function. Accordingly, the flange must be considered when construing the claim.

Second, the parties dispute the significance of Figs. 11-14, which are identical to the respective drawings in Figs. 7-10 with the exception that the handle and end-cap in Figs. 11-14 are drawn in dotted lines. Helman maintains that the dotted lines are an explicit disclaimer of the handle and end-cap shape. TruCook responds that the dotted lines in Figs. 7-11 actually expand the scope of the patent to include any device that would be used as both a meat thermometer and meat cooking utensil that employs a gauge like those shown in 7-11.

Neither argument convincingly explains the presence of Figs. 11-14. Helman's proffered explanation that the inventor intended to disclaim the handle and end-cap shape would eviscerate more than half of the claimed design. Furthermore, Figs. 1-10 make clear that the claim includes the handle and end-cap. Hence, Helman's contention must be rejected. On the other hand, TruCook

argues that Figs. 11-14 broaden the scope of the patent, conferring protection under the '705 patent to any indicator device and utensil for cooking meat as long as it included one of these four temperature gauges. Such a construction would ultimately protect any combination meat fork-thermometer equipped with a temperature gauge similar to any of the four pictured here regardless of whether the overall visual impression differed markedly from TruCook's claim. This obviously conflicts with the first step in a design patent infringement analysis, however, which requires a comparison between the overall appearance of the accused device and the patent.

In keeping with the Federal Circuit's admonition to construe patents susceptible to more than one construction in a manner that preserves validity, the Court views the inclusion of Figs. 7-10 and 11-14 differently. Figs. 7-10 appear to have been included to convey the placement of possible gauges relative to the handle and end-cap: the temperature gauge will be centrally located on the top of the handle. Figs. 11-14 merely remove the emphasis from the position of the gauges relative to the handle and end-cap shape and demonstrate various embodiments, each with a different gauge, that the patent is intended to protect.

This begs the question, then, of the importance of the individual gauges to the overall design patent. Helman argues that the inclusion of the different temperature gauges and the

- 7 -

examiner's conclusion that they are patentably indistinct results in a disclaimer of the gauge shape. TruCook contends that, although patentably indistinct, the separate gauges enjoy their own scope of protection under the patent and must be treated separately.

The examiner noted that the patent included five embodiments. Four of the embodiments depict four different temperature gauges. It is well established that multiple embodiments of a single inventive concept may be included in the same design application only of they are patentably indistinct. *In re Rubinfeld*, 270 F.2d 391 (C.C.P.A. 1959). Each embodiment, however, is not entitled to its own scope of protection because, unlike utility patents, design patents protect only one inventive concept and only one claim is permitted. *L.A. Gear*, 988 F.2d at 1123.

When determining infringement, the fact finder is charged with comparing the overall similarity of the patent with the accused device, and the temperature gauge would certainly factor into that calculus. Nevertheless, the examiner of the '705 patent concluded that the various gauges shown in Figs. 7-10 and 11-14 are patentably indistinct: they do not sufficiently vary from the overall visual impression to warrant separate patents. As the Manual of Patent Examining Procedure explains, various embodiments are patentably indistinct when

> the differences between the embodiments [are]
> either . . . de minimis and unrelated to their

> overall aesthetic appearance or . . . obvious
> to a designer of ordinary skill in view of the
> analogous prior art. . . .

MPEP § 1504.05.

If identical forks equipped with any of the four gauges would fail to support a separate patent, then surely an identical fork equipped with another, potential variant of the temperature gauge would also be protected by the '705 patent. Thus, the '705 patent cannot be limited to the four gauges shown in Figs. 11-14; it protects meat fork-thermometers with the patented design that contain either a gauge pictured in Figs. 11-14 as well as other possible gauges having a de minimis impact on the design's overall visual impression. A claim construction that includes a description of each of the four gauges shown would improperly limit the protective scope of the '705 patent to a similar device bearing one of these four gauges. As the examiner concluded that the various gauges are patentably indistinct, a claim construction that includes a specific description of the gauge would be improper.

Both parties propose competing claim constructions. Helman provides a numbered list detailing the ornamental features, and TruCook presents a short sentence essentially referring the reader to the patent drawings. A review of design patent cases reveals that an approach similar to Helman's construction best accomplishes the Court's duty to "limit[] the scope of the patent to its overall

ornamental visual impression, rather than to [a] broader general design concept." See OddzOn, 1396 F.3d at 1405.

## CONCLUSION

The single claim of the '705 patent is directed to the design for a meat thermometer and utensil. Visually, the device resembles a large meat fork consisting of: (1) a rectangular handle with rounded edges exhibiting a temperature indicator on the top side of the handle, a separate end-cap on one end, and a protruding rectangular flange perpendicular to the handle on the opposite end, with the handle tapering as it approaches the flange; (2) an elongated rectangular fork neck, extending from the flange, that is narrower in width than the handle when viewed from the top and substantially thinner than the handle when viewed from the side; and (3) a fork head that, when viewed from the side, is the same thickness as the fork neck and angles downward from the fork neck to a vertex from which two fork tines project forward and angle upward, with the two fork tines extending more than half-way up the fork head, tapering to a point, and with an arc between the tines near the vertex.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: July 18, 2001

- 10 -